## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: ) | |
| ) | Case No.: 16-10643 |
| CHRISTOPHER MARTIN RIDGEWAY ) | |
| ) | Chapter 11 |
| DEBTOR ) | Judge Elizabeth W. Magner, Section "A" |
| ) | |
| ) | |
| _____ ) | Adv. No. _____ |
| ) | |
| STRYKER CORPORATION and ) | |
| HOWMEDICA OSTEONICS CORP., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| CHRISTOPHER MARTIN RIDGEWAY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

### ADVERSARY COMPLAINT OBJECTING TO DISCHCARGEABILITY
### OF DEBTS PURSUANT TO 11 U.S.C. §§ 523(a)(4) and (a)(6)

Plaintiffs Stryker Corporation and Howmedica Osteonics Corp. (collectively "Stryker"), by and through their undersigned counsel, file this Complaint against Defendant/Debtor Christopher Martin Ridgeway ("Ridgeway") to obtain an order and judgment declaring Ridgeway's debts to Stryker nondischargeable under 11 U.S.C. § 523(a). In support thereof, Stryker states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(j).

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for this action are 11 U.S.C. §§ 523(a)(4) and 523(a)(6).

## PARTIES

4. Plaintiff Stryker Corporation is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Kalamazoo, Michigan.

5. Plaintiff Howmedica Osteonics Corp. is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Mahwah, New Jersey, and is a wholly owned subsidiary of Stryker Corporation.

6. Defendant/Debtor Christopher Martin Ridgeway is a citizen and domiciliary of Louisiana.

## FACTUAL BACKGROUND

7. The deadline for filing objections to discharge or dischargeability is July 1, 2016. Accordingly, this Complaint is timely filed.

8. Stryker Corporation and Howmedica Osteonics Corp. possess general unsecured claim in Ridgeway's bankruptcy case in the amount of $3,479,853.45.

**Ridgeway's Employment with Stryker.**

9. Ridgeway is a former employee and agent of Stryker, a global leader in the development, manufacture and sale of medical device sales.

10. Ridgeway worked for the CranioMaxillofacial ("CMF") division of Stryker, which manufactures and sells biomaterials, fixation systems, maxillofacial plating systems for bone fixation and other craniomaxillofacial fractures, neuro plating systems, customized implants, and surgical instruments.

11. Ridgeway formally accepted employment as a sales representation with Stryker on October 25, 2001.

12. Ridgeway's employment with Stryker became effective when he returned his executed Offer Letter, executed Code of Conduct, and executed Employee Non-Compete Agreement.

13. After starting employment, Ridgeway later also executed Stryker's Employee Confidentiality & Intellectual Property Agreement (the "Confidentiality Agreement").

14. On or around February 2012, Ridgeway was promoted to District Sales Manager for Stryker CMF in the South Louisiana Territory.

15. Once promoted into the District Manager position, Ridgeway assumed even greater responsibility for and on behalf of Stryker and was the highest ranking employee for Stryker CMF in Louisiana.

16. As the District Sales Manager, Ridgeway was the liaison between Stryker and its key customers whereby Ridgeway acted as the face of Stryker to its clients.

17. In his role as District Sales Manager, Stryker relied upon Ridgeway to cultivate and grow relationships with surgeons in Louisiana, including supporting surgeons, and showcasing the function and advantage of Stryker CMF's products.

**Stryker terminates Ridgeway's employment and commences litigation.**

18. In or about September 2013, Stryker learned that Ridgeway was violating the terms of his executed employment agreements including the Offer Letter, Code of Conduct, Employee Non-Compete Agreement, and Confidentiality Agreement.

19. Specifically, Ridgeway was meeting with Stryker's competitor, Biomet Microfixation, LLC and Biomet Spine (collectively "Biomet"), and disclosing Stryker's trade secrets and confidential pricing information in an attempt to obtain a distributorship deal with Biomet through Ridgeway's wholly-owned company, Stone Surgical, LLC ("Stone").

20. Stryker terminated Ridgeway's employment on September 10, 2013.

21. Thereafter, Stryker learned more about Ridgeway's misconduct.

22. Accordingly, on September 30, 2013, Stryker filed an action in the Western District of Michigan, styled *Stryker Corporation, et al., v. Christopher Ridgeway, et al.,* Case No. 13-cv-1066 ("Michigan Action"), asserting claims for breaches of contract, breach of fiduciary duty, and misappropriation of trade secrets under the Michigan Trade Secrets Act.

23. Stryker filed an Amended Complaint in the Michigan Action alleging detailed facts demonstrating that Ridgeway: (a) misappropriated Stryker's trade secrets in violation of Michigan law; and (b) willfully and maliciously: (i) breached his the Offer Letter; (ii) breached his Code of Conduct; (iii) breached his Employee Non-Compete Agreement; (iv) breached his Confidentiality Agreement; (v) misappropriated Stryker's trade secrets; and (vi) breached fiduciary duties that he owed to Stryker under Michigan law.

24. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit A** and incorporated herein.

25. Specifically, Ridgeway: (a) operated side businesses in direct violation of the Stryker Code of Conduct; (b) refused to hire qualified candidates necessary to support the South Louisiana market; (c) fraudulently manipulated the billing process at one of Stryker's largest hospital customers thereby tricking the hospital into ordering additional product; (d) solicited Stryker's employees and intended to take them to Stone; and (e) stole Stryker confidential pricing information and other trade secrets to use on behalf of Biomet and Stone to the detriment of Stryker.

**Ridgeway is repeatedly sanctioned in the Michigan Action.**

26. During discovery, Stryker sought to gather evidence of Ridgeway's misconduct related to his solicitation of Stryker customers, operating of side businesses, and retention of Stryker confidential and trade secret information subsequent to his termination of employment with Stryker. Ridgeway and Stone, however, systematically violated their respective discovery obligations, including by concealing evidence and lying about the existence of such evidence to Stryker and the Court.

27. Beginning in October 2015, Stryker served discovery requests on Ridgeway.

28. In February 2015, after attempting to amicably resolve Ridgeway's failure to properly respond to the discovery requests, Stryker filed a motion to compel against Ridgeway.

29. On March 17, 2015, the District Court granted Stryker's motion.

30. On April 10, 2015, the District Court awarded Stryker its attorney's fees for bringing the motion pursuant to Fed. R. Civ. P. 37(a)(5)(A).

31. In total, Ridgeway was sanctioned $14,635.00 for his discovery failures (the "First Sanctions Award").

32. A true and correct copy of the First Sanctions Award is attached hereto as **Exhibit B**.

33. Thereafter, during the course of discovery in the Michigan Action, Stryker learned, based on a third-party subpoena, that Ridgeway made a proposal to one of Stryker's customers on behalf of Biomet, which he failed to disclose in discovery.

34. Based on that and other documents that Biomet produced, Stryker moved for a rule to show cause, arguing that Ridgeway either destroyed evidence or was wrongfully withholding it.

35. Following several hearings on the issue, on July 24, 2015, the District Court entered an order compelling Ridgeway to turn over all of his electronic media, including personal and work computers, iPads, iPhones, and other media devices, for forensic imaging and searching for relevant information.

36. As a result of that order and based on the forensic investigation performed on the devices, approximately 188,000 documents were turned over to Stryker in November 2015.

37. In reviewing and analyzing a portion of those documents, Stryker's attorneys uncovered repeated and significant instances in which the Ridgeway misappropriated Stryker's trade secret pricing in the weeks following his termination from Stryker and then used such information to prepare competitive proposals on Biomet's behalf.

38. Based on these discoveries, Stryker moved for terminating and other sanctions against Ridgeway, arguing that such failure to produce these documents severely prejudiced Stryker in the prosecution of its claims against Ridgeway.

39. On February 1, 2016, two weeks before the start of trial, the District Court entered a second sanctions order, granting Stryker's motion in part and finding that Ridgeway was liable to Stryker for its attorneys' fees and forensic examination costs, based on Ridgeway's improper discovery violations including "bad faith conduct that resulted in prejudice to Stryker" ("Second Sanctions Order").

40. A true and correct copy of the Second Sanctions Order is attached hereto as **Exhibit C and incorporated herein.**

41. Stryker was granted leave to file its fee petition arising out of the Second Sanctions Order two weeks after the trial ended.

42. Two weeks later, on February 16, 2016, the District Court granted Stryker's motion to bar Ridgeway from utilizing other documents among the 188,000, further explaining the procedural history and Ridgeway's bad faith actions in discovery ("Bar Order").

43. A true and correct copy of the Bar Order is attached hereto as **Exhibit D** and incorporated herein.

44. On March 14, 2016, Stryker filed a request seeking reimbursement of fees in the amount of approximately $223,351.16 ("Second Sanctions Fee Petition").

45. A true and correct copy of the Second Sanctions Fee Petition (with exhibits) is attached hereto as **Exhibit E** and incorporated herein.

46. The filing of Ridgeway's bankruptcy case stayed adjudication of the Second Sanctions Fee Petition so the amount of same remains unliquidated.

**Judgment is entered in favor of Stryker.**

47. In accordance with Michigan law, the jury instructions provided that: (a) willful misconduct means conduct or a failure to act that was intended to harm the plaintiff, Stryker; (b) wanton misconduct means conduct or a failure to act that shows such indifference to whether harm will result as to be equal to a willingness that harm will result; and (c) malicious misconduct means an intentional wrongful act done willfully or intentionally against another without legal justification or excuse. *See* Jury Instructions at p. 44.

48. A true and correct copy of the Jury Instructions is attached hereto as **Exhibit F** and incorporated herein.

49. After a two-week trial, the jury found in favor of Stryker against Ridgeway.

50. Specifically, the jury found that Ridgway: (a) willfully and maliciously misappropriated Stryker's trade secrets; (b) willfully and wantonly breached his fiduciary duty to Stryker; and (c) breached his Non-Compete and Confidentiality Agreements ("Jury's Findings").

51. A true and correct copy of the Jury's Findings is attached hereto as **Exhibit G** and incorporated herein.

52. Based on the jury's findings, on March 9, 2016, the District Court entered judgment ("Judgment") in favor of Stryker against Ridgeway in the amount of $745,195.00 and a judgment of no-cause as to Ridgeway's counterclaims and Stone's claims against Stryker.

53. A true and correct copy of the Judgment is attached hereto as **Exhibit H** and incorporated herein.

54. With respect to the breach of contract claim, the jury awarded Stryker $158,427.50.

55. With respect to the breach of fiduciary duty claim, the jury awarded Stryker $299,847.00.

56. In addition, the jury awarded Stryker exemplary damages in the amount of $128,493.00, upon the express finding that Ridgeway's breach of fiduciary duty was willful and wanton.

57. The jury also made express findings that Ridgeway's misappropriation of Stryker's trade secrets was "willful and malicious" and awarded Stryker $158,427.50.

58. In addition, pursuant to the Michigan Uniform Trade Secrets Act (Mich. Comp. Laws § 445.1905), Stryker is entitled to recover its attorneys' fees based on the jury's finding that Ridgeway willfully and maliciously misappropriated trade secrets.

59. Under the "common core doctrine," federal law and the lodestar method of calculation and utilizing discounted, but prevailing hourly rates for the Western District of Michigan, Stryker seeks attorneys' fees amounting to $2,319,877.68 ("Trade Secrets Misappropriation Fee Petition").

60. The filing of Ridgeway's bankruptcy stayed the filing and adjudication of the Trade Secrets Misappropriation Fee Petition.

61. Stryker is also entitled to an award of costs of $143,535.29 pursuant to Fed. R. Civ. P. 54.

62. Moreover, pursuant to Mich. Comp. Laws § 600.6013 and 28 U.S.C. § 1961, Stryker asserts a claim for its pre- and post-judgment interest. Based on the applicable interest rates, Stryker is entitled to $47,705.74 in prejudgment interest on the jury verdict and post-judgment interest consisting of $13.47 in *per diem*.

63. For the fourteen (14) days between entry of the judgment and the Petition Date, Stryker is entitled to $188.58.

64. Stryker further asserts claims for post-Petition post-judgment interest in an unknown amount.

65. Accordingly, Stryker holds a valid and allowable general unsecured claim against Ridgeway of not less than **$3,479,853.45** including the following components:

    a. $223,351.16 in unliquidated attorneys' fees and costs for the Second Sanctions Fee Petition;

    b. $745,195.00 for liquidated actual damages awarded by the Jury;

    c. $2,319,877.68 for unliquidated attorneys' fees for the Trade Secrets Misappropriation Fee Petition (excluding the First Sanctions Award and the Second Sanction Award);

    d. $143,535.29 in unliquidated costs (excluding the First Sanctions Award and the Second Sanction Award);

    e. $47,705.74 for unliquidated pre-judgment interest;

    f. $188.58 for unliquidated post-judgment interest accrued prior to the Petition Date; and

    g. An unknown amount of post-judgment interest accruing after the Petition Date.

**Ridgeway files for bankruptcy protection.**

66. Ridgeway filed his bankruptcy petition ("Petition") on March 23, 2016 ("Petition Date"), approximately one week after entry of Judgment.

67. The filing of the bankruptcy case stayed the Michigan Action.

68. Through this action, Stryker seeks to establish the non-dischargeability of $3,479,853.45 in debt Ridgeway owes to Stryker pursuant to the Judgment in the Michigan Action.

## CAUSES OF ACTION

**Count 1 – Nondischargeability of Debt Under 11 U.S.C. § 523(a)(4) - Embezzlement**

69. Stryker restates and realleges paragraphs 1 through 68 as though fully stated herein.

70. Bankruptcy Code section 523(a)(4) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing "embezzlement."

71. Ridgeway is an individual.

72. Ridgeway incurred a debt owed to Stryker for misappropriation of Stryker's trade secrets in the amount of $158,427.50 as set forth in the Jury Instructions, Jury's Findings and Judgment in the Michigan Action.

73. As set forth in detail in the Michigan Action Amended Complaint, Jury Instructions, Jury's Findings and Judgment:

  a. Stryker entrusted Ridgeway with Stryker's trade secrets;

  b. Ridgeway misappropriated Stryker's trade secrets for his own use or benefit; and

  c. Ridgeway misappropriated Stryker's trade secrets with fraudulent intent.

74. Ridgeway's debt owed to Stryker for misappropriation of Stryker's trade secrets in the amount of $158,427.50 arose from Ridgeway's fraudulent misappropriation of Stryker's trade secrets which had previously been entrusted to him, constituting embezzlement against Stryker.

WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations owed to Stryker in the amount of $158,427.50 for misappropriation of Stryker's trade secrets, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(4) for embezzlement and granting such further relief as is just and proper.

**Count 2 – Nondischargeability of Debt Under 11 U.S.C. § 523(a)(4) - Larceny**

75. Stryker restates and realleges paragraphs 1 through 68 as though fully stated herein.

76. Bankruptcy Code section 523(a)(4) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing "larceny."

77. Ridgeway is an individual.

78. Ridgeway incurred a debt owed to Stryker for misappropriation of Stryker's trade secrets in the amount of $158,427.50 as set forth in the Jury Instructions, Jury's Findings and Judgment in the Michigan Action.

79. As set forth in detail in the Michigan Action Amended Complaint, Jury Instructions, Jury's Findings and Judgment:

    a. Ridgeway fraudulently and wrongfully took Stryker's trade secrets without Styrker's consent;

  b. Ridgeway took Stryker's trade secrets with intent to convert the trade secrets for Ridgeway's personal use or benefit; and

  c. Ridgeway took Stryker's trade secrets with the fraudulent intent to permanently deprive Stryker of its continued use of its trade secrets.

80. Ridgeway's debts owed to Stryker for misappropriation of Stryker's trade secrets in the amount of $158,427.50 arose from Ridgeway's taking and carrying away of Stryker's trade secrets with fraudulent intent to permanently deprive Stryker of that property, constituting larceny against Stryker.

  WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations owed to Stryker in the amount of $158,427.50 for misappropriation of Stryker's trade secrets, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(4) for larceny and granting such further relief as is just and proper.

**Count 3 – Nondischargeability of Debt Under 11 U.S.C. § 523(a)(6) - Willful and Malicious Misappropriation of Trade Secrets**

81. Stryker restates and realleges paragraphs 1 through 68 as though fully stated herein.

82. Bankruptcy Code section 523(a)(6) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing a willful and malicious injury against Stryker.

83. Ridgeway is an individual.

84. Ridgeway incurred a debt owed to Stryker for the willful and malicious misappropriation of Stryker's trade secrets in the amount of $158,427.50 as set forth in the Jury Instructions, Jury's Findings and Judgment in the Michigan Action.

85. As set forth in detail in the Michigan Action Amended Complaint, Jury Instructions, Jury's Findings and Judgment:

    a. Ridgeway's actions and conduct in misappropriating Stryker's trade secrets were intended to harm Stryker; and

    b. Ridgeway acted with the actual intent, without just cause or excuse, to cause injury to Stryker.

86. Ridgeway's debts to Stryker arose from Ridgeway's intent to cause willful and malicious injury to Stryker in the amount of $158,427.50 based on Ridgeway's the willful and malicious misappropriation of Stryker's trade secrets.

WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations owed to Stryker in the amount of $158,427.50 for the willful and malicious misappropriation of Stryker's trade secrets, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6) and granting such further relief as is just and proper.

**Count 4 – Nondischargeability of Debt Under 11 U.S.C. § 523(a)(6) - Willful and Malicious Misappropriation of Trade Secrets - Trade Secrets Misappropriation Fee Petition**

87. Stryker restates and realleges paragraphs 1 through 69 as though fully stated herein.

88. Bankruptcy Code section 523(a)(6) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing a willful and malicious injury against Stryker.

89. Ridgeway is an individual.

90. Ridgeway incurred a debt owed to Stryker in the amount of $2,319,877.68 arising from attorneys' fees incurred by Stryker from the prosecution of claims against Ridgeway in the Michigan Action for Ridgeway's willful and malicious misappropriation of trade secrets.

91. As set forth in detail in the Michigan Action Amended Complaint, Jury Instructions, Jury's Findings and Judgment:

   a. Ridgeway's actions and conduct in misappropriating Stryker's trade secrets were intended to harm Stryker; and

   b. Ridgeway acted with the actual intent, without just cause or excuse, to cause injury to Stryker.

92. Ridgeway's debts to Stryker arising from the attorneys' fees incurred by Stryker in the amount of $2,319,877.68 arose from Ridgeway's intent to cause willful and malicious injury to Stryker based on Ridgeway's willful and malicious misappropriation of trade secrets.

WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations to Stryker in the amount of $2,319,877.68 arising from the attorneys' fees incurred by Stryker, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6) and granting such further relief as is just and proper.

**Count 5 – Nondischargeability of Debt Under 11 U.S.C. § 523(a)(6) - Willful and Malicious Misappropriation of Trade Secrets - Costs**

93. Stryker restates and realleges paragraphs 1 through 68 as though fully stated herein.

94. Bankruptcy Code section 523(a)(6) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing a willful and malicious injury against Stryker.

95. Ridgeway is an individual.

96. Ridgeway incurred a debt owed to Stryker in the amount of $143,535.29 arising from costs incurred by Stryker from the prosecution of claims against Ridgeway in the Michigan Action for Ridgeway's willful and malicious misappropriation of trade secrets.

97. As set forth in detail in the Michigan Action Amended Complaint, Jury Instructions, Jury's Findings and Judgment:

   a. Ridgeway's actions and conduct in misappropriating Stryker's trade secrets were intended to harm Stryker; and

   b. Ridgeway acted with the actual intent, without just cause or excuse, to cause injury to Stryker.

98. Ridgeway's debts to Stryker arising from the costs incurred by Stryker in the amount of $143,535.29 arose from Ridgeway's intent to cause willful and malicious injury to Stryker based on Ridgeway's willful and malicious misappropriation of trade secrets.

WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations to Stryker in the amount of $143,535.29 arising from the costs incurred by Stryker, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6) and granting such further relief as is just and proper.

**Count 6 – Nondischargeability of Debt Under 11 U.S.C. § 523(a)(6) - Willful and Malicious Misappropriation of Trade Secrets - Second Sanctions Fee Petition**

99. Stryker restates and realleges paragraphs 1 through 68 as though fully stated herein.

100. Bankruptcy Code section 523(a)(6) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing a willful and malicious injury against Stryker.

101. Ridgeway is an individual.

102. Ridgeway incurred a debt owed to Stryker in the amount of $223,351.16 for attorneys' fees and costs incurred by Stryker from prosecution resulting in the Second Sanctions Order against Ridgeway in the Michigan Action for bad faith discovery abuses.

103. As set forth in detail in the Second Sanctions Order and Bar Order:

   a. Ridgeway's actions and conduct were intended to harm Stryker; and

   b. Ridgeway acted with the actual intent, without just cause or excuse, to cause injury to Stryker.

104. Ridgeway's debts to Stryker arising from the attorneys' fees and costs incurred by Stryker in the amount of $223,351.16 arose from Ridgeway's intent to cause willful and malicious injury to Stryker based on Ridgeway's bad faith discovery abuses.

WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations to Stryker in the amount of $223,351.16 arising from the attorneys' fees and costs incurred by Stryker, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6) and granting such further relief as is just and proper.

**Count 7 – Nondischargeability of Debt Under 11 U.S.C. § 523(a)(6) - Willful and Malicious Breach of Fiduciary Duty**

105. Stryker restates and realleges paragraphs 1 through 68 as though fully stated herein.

106. Bankruptcy Code section 523(a)(6) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing a willful and malicious injury against Stryker.

107. Ridgeway is an individual.

108. Ridgeway incurred a debt owed to Stryker for the willful and malicious injury pursuant to his willful and wanton breach of fiduciary duties to Stryker against him in the amount of $428,340.00 as set forth in the Jury Instructions, Jury's Findings and Judgment in the Michigan Action.

109. As set forth in the Amended Complaint, Jury Instructions, Jury's Findings, and Judgment in the Michigan Action:

   a. Ridgeway's actions and conduct in willfully and wantonly breaching his fiduciary duties to Stryker were intended to harm Stryker; and

   b. Ridgeway acted with the actual intent, without just cause or excuse, to cause injury to Stryker.

110. Ridgeway's debts to Stryker in the amount of $428,340.00 arose from Ridgeway's intent to cause willful and malicious injury to Stryker based on Ridgeway's willful and wanton breach of his fiduciary duties to Stryker.

WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations to Stryker arising from Ridgeway's willful and malicious breach of his fiduciary duties owed to Stryker in the amount of $428,340.00, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6) and granting such further relief as is just and proper.

**Count 8 – NonDischargeability of Debt Under 11 U.S.C. § 523(a)(6) - Willful and Malicious Breach of Contract**

111. Stryker restates and realleges paragraphs 1 through 68 as though fully stated herein.

112. Bankruptcy Code section 523(a)(6) provides that discharge under Bankruptcy Code sections 727 and 1141 does not discharge an individual debtor from any debt incurred by committing a willful and malicious injury against Stryker.

113. Ridgeway is an individual.

114. Ridgeway incurred a debt owed to Stryker in the amount of $158,427.50 based on breach of the Non-Compete and Confidentiality Agreements as set forth in the Jury Instructions, Jury's Findings, and Judgment in the Michigan Action.

115. As set forth in detail in the Amended Complaint, Jury Instructions, Jury's Findings, and Judgment in the Michigan Action:

   a. Ridgeway's actions and conduct in breaching his contracts with Stryker were intended to harm Stryker; and

   b. Ridgeway acted with the actual intent, without just cause or excuse, to cause injury to Stryker.

116. Ridgeway's debts to Stryker arose from Ridgeway's intent to cause willful and malicious injury to Stryker in the amount of $158,427.50 based on Ridgeway's breach of the Non-Compete and Confidentiality Agreements as set forth in the Jury Instructions, Jury's Findings and Judgment in the Michigan Action.

WHEREFORE, Stryker requests that this Court enter an order declaring Ridgeway's obligations to Stryker in the amount of $158,427.50 arising from Ridgeway's willful and malicious breach of his contracts, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6) and granting such further relief as is just and proper.

# **PRAYER**

**WHEREFORE**, after due proceedings be had, Stryker prays that this Court enter an order and judgment as follows:

(1) declaring Ridgeway's obligations owed to Stryker in the amount of $158,427.50 for misappropriation of Stryker's trade secrets, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(4) for embezzlement;

(2) declaring Ridgeway's obligations owed to Stryker in the amount of $158,427.50 for misappropriation of Stryker's trade secrets, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(4) for larceny;

(3) declaring Ridgeway's obligations owed to Stryker in the amount of $158,427.50 for the willful and malicious misappropriation of Stryker's trade secrets, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6);

(4) declaring Ridgeway's obligations to Stryker in the amount of $2,319,877.68 arising from the attorneys' fees incurred by Stryker based on Ridgeway's willful and malicious misappropriation of Stryker's trade secrets, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6);

(5) declaring Ridgeway's obligations to Stryker in the amount of $143,535.29 arising from the costs incurred by Stryker arising from Ridgeway's willful and malicious injuries to Stryker, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6);

(6) declaring Ridgeway's obligations to Stryker in the amount of $223,351.16 arising from the attorneys' fees and costs incurred by Stryker in the Second Sanctions Fee Petition, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6);

(7) enter an order declaring Ridgeway's obligations to Stryker arising from Ridgeway's willful and malicious breach of his fiduciary duties owed to Stryker in the amount of $428,340.00, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6);

(8) enter an order declaring Ridgeway's obligations to Stryker in the amount of $158,427.50 arising from Ridgeway's willful and malicious breach of his contracts, as well as all pre- and post-judgment interest, nondischargeable under 11 U.S.C. § 523(a)(6); and

(9) grant all other relief that this Court deems just and equitable.

**New Orleans, Louisiana** the 20th day of June, 2016.

    */s/ Tristan Manthey*

Tristan Manthey, La Bar No. (24539)
Cherie Dessauer Nobles, La Bar No. 30476
**HELLER, DRAPER, HAYDEN,
 PATRICK & HORN, LLC**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Telephone: 504-299-3300
Fax: 504-299-3399

James B. Sowka (admitted *Pro Hac Vice*)
**SEYFARTH SHAW LLP**
131 S. Dearborn St, Suite 2400
Chicago, Illinois 60603-5577
Telephone: 312-460-5000
Fax: 312-460-7000

*Counsel for Stryker Corporation and Howmedica Osteonics, Corp.*